UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEITH ELROY SMITH,

    Petitioner,

v.                                                                                  Case No. 2:09-cv-215
                                                                    HON. R. ALLAN EDGAR

GREG MCQUIGGIN,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner filed this petition for writ of habeas corpus challenging his prison sentence of concurrent terms of mandatory life imprisonment for first-degree premeditated murder, MCL 750.316, three to five years for felon in possession of a firearm, MCL 750.224f, and a consecutive two-year term for possession of a firearm during the commission of a felony, MCL 750.227b. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

Petitioner raises the following claims:

I. Petitioner was denied due process of law and his right to confrontation when the trial court admitted the preliminary examination testimony of an unavailable witness.

II. Petitioner argues the trial court erred when it did not properly give a cautionary instruction on accomplice testimony with regard to a key witness.

> III. Petitioner was denied the effective assistance of counsel when trial counsel failed to move for production of a witness, failed to obtain discovery material, and failed to object to prosecutorial misconduct.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court

decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner asserts that the admission of an unavailable witness's preliminary examination testimony at trial violated his Sixth Amendment right of confrontation. The Michigan Court of Appeals disagreed:

> The Sixth Amendment bars testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. US Const, Am VI; Const 1963, art 1, § 20; *Crawford v Washington,* 541 US 36, 54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Here, it is undisputed that Gentry's preliminary examination testimony was testimonial. Thus, his prior testimony could only be properly admitted against defendant if Gentry was unavailable and defendant had the prior opportunity to cross-examine him.
>
> A witness is "unavailable" if he is "absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance...by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5). The due diligence factor requires that the prosecutor "made a diligent good-faith effort in its attempt to locate a witness for trial." *People v Bean,* 457 Mich 677, 684; 580 NW2d 390 (1998). The test is "one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id.* at 684.
>
> Defendant specifically asserts that the prosecutor failed to meet its due diligence obligation because its attempts to locate Gentry were "tardy and incomplete." To support his argument, defendant relies on *People v Dye,* 431 Mich 58; 427 NW2d 501 (1988) and *People v James (after remand),* 192 Mich App 568; 481 NW2d 715 (1992), but the cases are clearly distinguishable.
>
> In *Dye,* though the prosecutor knew that the witnesses (1) were difficult to locate for the first trial, (2) left the state after the first trial and, (3) had incentives to go into hiding, the prosecutor made no effort to locate them, other than single visits to their homes. In light of those facts, our Supreme Court found a lack of due diligence in securing the witnesses at retrial. *Dye, supra* at 67-73, 76-78.

Michigan Court of Appeals' Opinion, Docket #23, at 2.

The Michigan Court of Appeals found that the prosecutor knew of no potential difficulty in locating Gentry for trial nor of any incentives he had to go into hiding. On the second day of the trial, when the prosecution realized that Gentry might not arrive, the prosecution and police set out on an exhaustive search to find him. Police visited the witness's known residence, the YMCA, and spoke with his sister about his whereabouts. The next day, police made several more attempts to find him to no avail. The police also contacted the Wayne County Jail and the morgue in their attempts to find Gentry. It is clear that unlike *Dye,* the prosecution and police officers made substantial efforts to locate Gentry to produce him for trial.

According to the Michigan Court of Appeals, this case was also distinguishable from *People v. James*. In *James,* the Court found that the prosecutor's efforts were tardy because the prosecution had no communication with the witness for over three and a half years between the preliminary examination and the trial. In the case at hand, only three months had passed between the preliminary examination and the time of the trial. Accordingly, the Michigan Court of Appeals found that Gentry was properly considered "unavailable."

The Michigan Court of Appeals also held that Petitioner had a prior opportunity to cross-examine the witness. The Court explained:

> Here, the prosecutor elicited Gentry's preliminary examination testimony to establish defendant's guilt and the prosecutor introduced the testimony at trial for the same purpose. Similarly, defendant's trial counsel cross-examined Gentry at the preliminary examination in an effort to show inconsistencies between his testimony and other evidence and to prove that defendant did not commit the crimes for which he was charged. Therefore, we hold that defendant had the opportunity to cross-examine Gentry at the preliminary examination under a similar motive. *Meredith, supra* at 66-67. Because Gentry was unavailable, as required by the Confrontation Clause, and defendant had the prior opportunity to develop his testimony through cross-examination, we conclude that Gentry's preliminary

>examination testimony was properly admitted MRE 804(b)(1) and that defendant's right to confrontation was not violated. *Crawford, supra* at 54.

Michigan Court of Appeals' Opinion, Docket #23, at 3.

The Michigan Court of Appeals' decision, or the use of Gentry's preliminary examination testimony, did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner also argues that the trial court erred when it did not give cautionary accomplice instructions with regard to the testimony of a witness. The Michigan Court of Appeals wrote:

>"The decision whether to give a cautionary accomplice instructions falls within the trial court's sound discretion." *People v Young,* 472 Mich 130, 135; 636 NW2d 801 (2005). Here, defendant requested the disputed accomplice instruction, CJI2d 5.5, and thus, properly preserved the issue regarding CJI2d 5.5. MCL 768.29; MCR 2.516(C); *People v Sabin (On Second Remand),* 242 Mich App 656, 657; 620 NW2d 19 (2000). Accordingly, we review the trial court's decision to refuse defendants request for the disputed accomplice instruction, CJI2d 5.5, for an abuse of discretion. *Young, supra* at 135. However, defendant neither requested the cautionary instruction on accomplice testimony, CJI2d 5.6, nor objected to the court's failure to give one. Thus, our review of the unpreserved issue regarding the accomplice testimony instruction, CJI2d 5.6, is limited for plain error affecting defendant's substantial rights. *Id.; People v Carines,* 460 Mich 750, 761, 764-767; 597 NW2d 130 (1999).
>
>Generally, if a defendant requests a cautionary instruction regarding an accomplice's testimony, a trial court is required to give the instruction. *People v Ho,* 231 Mich App 178, 188-189; 585 NW2d 357 (1998). However, a trial court is not required to give requested instructions that are not supported by the evidence or the facts of the case. *Id.* Here, the trial court properly refused to read the instruction

> because no evidence showed that Gentry was an accomplice "who knowingly and willingly helped or cooperated with someone else in committing a crime." *People v Allen,* 201 Mich App 98, 105; 505 NW2d 869 (1993), quoting CJI2d 5.5. Though Gentry was with the victim in his van at the time of the shooting, nothing in the record indicates that Gentry knew that defendant planned to shoot the victim. Gentry did not encourage defendant, but instead fled for his life when he saw defendant fire the first shot into the van. Gentry heard the second shot as he ran to his house, and he immediately told his neighbor to call for help. The record simply does not reveal that Gentry participated in the victim's murder. In the absence of evidence that Gentry acted as defendant's accomplice, we hold that the trial court did not abuse its discretion in refusing to read the disputed accomplice instruction regarding Gentry. *Ho, supra* at 189.

Michigan Court of Appeals' Opinion, Docket #23, at 4.

The Court also found that no plain error had occurred. The Court cited MCL 768.29 which provides that the failure to instruct on a point of law is not a ground for setting aside a verdict unless the instruction is requested by the accused. The court also cited MCR 2.516(C), which reads that a party may assign as error the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). "As a general rule, errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings . . . unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Long v Smith,* 663 F.2d 18, 23 (6th Cir. 1981). The United States Supreme Court stated:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such collateral proceeding is "whether the ailing instruction by itself

> so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"

*Henderson v Kibbe,* 431 U.S. 145, 154 (1977) (citations omitted).

In this case, the trial court instructed the jury on its duty to determine the credibility of the witnesses. Accordingly, Petitioner cannot establish that he is entitled to habeas relief on this issue.

Petitioner asserts that he was denied the effective assistance of counsel when trial counsel failed to obtain discovery crucial to his defense, failed to move for a production of a witness, and failed to object to prosecutorial misconduct. To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-96 (1984). Stated another way, this court is to decide whether Petitioner's trial counsel's alleged failures were such egregious errors as to constitute ineffectiveness and whether the alleged failures were materially prejudicial. The Sixth Circuit has explained:

> The question for reviewing courts is whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Lockhart v. Fretwell*, 113 S.Ct. 838, 842-43 (1993). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Strickland*, 466 U.S. at 691, *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). In evaluating petitioner's claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise

> would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993). Thus, the determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was "snatched from the jaws of victory." *See id.*

*West v. Seabold*, 73 F.3d 81,84 (6th Cir. 1996).

Petitioner argues that his trial counsel was ineffective when counsel failed to obtain two reports submitted by a police officer that contained findings at the murder scene, specifically evidence found inside the van of the victim. This claim was rejected by the state trial court in its opinion and order denying Petitioner's motion for relief from judgment (dated June 11, 2007). The trial court noted that defense counsel did indeed have the reports and that Petitioner had failed to show any way in which his defense had been "hobbled."

Petitioner also argues that trial counsel was ineffective because counsel failed to locate a witness to testify in Petitioner's defense. Petitioner also raised this claim in his motion for relief from judgment. The state court rejected this assertion, stating that "existence or knowledge of the facts is a matter of pure speculation as is his trial testimony. Defendant does not know him . . . there is no evidence or indication that Donta's testimony would have been exculpatory or that defense counsel's representation of defendant was in any way inadequate in addressing the issue of this possible witness." Even if the witness had testified, there is no evidence that the outcome of the proceedings would have been any different.

Petitioner claims that trial counsel's failure to object to prosecutorial misconduct constitutes ineffective assistance of counsel. Petitioner claims trial counsel was ineffective when counsel failed to object to the prosecutor's alleged "appeal to emotion" in his closing arguments. In its opinion and order denying Petitioner's motion for relief from judgment, the trial court found that

what Petitioner deemed an "appeal to emotion" was a "straight forward and permissible argument on the facts." Petitioner claims that the prosecution repeatedly made the statement that "the witnesses had no reason to lie." Petitioner also claims that the prosecution argued facts not in evidence. The trial court in its opinion and order found that this assertion was "unsupported by the quoted portions of argument in defendant's brief and motion." The court stated: "the trial prosecutor is clearly free to argue any fair and reasonable inferences that can be drawn from the facts presented." Petitioner has failed to show ineffective assistance of counsel or that even if his trial counsel had objected to any alleged misconduct, the outcome of the proceedings would have been different.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
    TIMOTHY P. GREELEY  
    UNITED STATES MAGISTRATE JUDGE

Dated: July 12, 2011